

**ORDERED in the Southern District of Florida on November 1, 2021.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

_Tagged Opinion_

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

In re:

Georgette Douglass,

     Debtor.

——————————————————/

William Richardson,

     Plaintiff,

v.

Georgette Douglass,

     Defendant.

——————————————————/

Case No. 20-23389-PDR

Chapter 13

Adv. Case No. 21-01097-PDR

### ORDER GRANTING IN PART MOTION TO DISMISS

Does an attorney, under 11 U.S.C. § 523(a)(4), act in a "fiduciary capacity" in the context of a standard attorney-client relationship?  And if a chapter 13 debtor has not sought a hardship discharge, is a claim under 11 U.S.C. § 523(a)(6) ripe?  The answer to these questions is simply no and this adversary proceeding is dismissed.

## Background

Georgette Douglas (the "Debtor" or "Defendant") represented William Richardson (the "Plaintiff") as his divorce attorney.  *See In re: Richardson v. Knight*, No. FMCE-12-000129 (Fla. 17th Cir. Ct.) (the "Dissolution Case").  After the representation terminated, the Plaintiff sued the Defendant for professional negligence and breach of fiduciary duty arising out of the Defendant's actions in the Dissolution Case.  *Richardson v. Douglass*, No. CACE-2017-009437 (Fla. 17th Cir. Ct.) (the "Malpractice Case").  In the Malpractice Case, the Plaintiff alleged that, despite the Plaintiff's clear statement that he did not agree to the equalization payment included in the proposed Martial Settlement Agreement, the Defendant announced the terms and despite the lack of the required statement on the record or by affidavit by Plaintiff ascending to the agreement, the Defendant failed to prevent the state court from entering a final judgment including the disputed terms (the "Final Judgment of Dissolution").

The Plaintiff retained new counsel and appealed the Final Judgment of Dissolution.  On appeal, Florida's Fourth District Court of Appeal remanded the case for further proceedings because the state court "erred by accepting the oral [Marital Settlement Agreement] as valid and incorporating it into the [Final Judgment of

Dissolution]" where "it was not based upon either parties' testimony or sworn statements." *Richardson v. Knight*, 197 So. 3d 143, 146 (Fla. 4th DCA 2016). Following remand, the parties renegotiated the Marital Settlement Agreement – this time with the correct calculations for the disputed equalization payment – which stated that the Plaintiff was not obligated to make any equitable distribution and was to be refunded the full amount previously paid.

During the Malpractice Case, the Defendant was sanctioned for destroying exculpatory evidence and for failing to comply with a court order. The state court granted summary judgment in favor of the Plaintiff and entered two final judgments totaling $164,029.00 but did not specify whether it was granting relief based on the Plaintiff's professional negligence or breach of fiduciary duty claim. Following the entry of the judgments in favor of the Plaintiff, the Defendant failed to comply with their terms and the Plaintiff sought a contempt order from the state court. Before the motion for contempt could be heard, the Defendant filed her voluntary Chapter 13 petition.

The Plaintiff initiated this adversary proceeding on March 22, 2021, alleging Defendant's debt is nondischargeable under 11 U.S.C. §§ 523(a)(4) and (6). Defendant moves to dismiss the §523(a)(4) count with prejudice and the §523(a)(6) count without prejudice.

## **Legal Standard**

Fed. R. Bankr. P. 7012 applies Fed. R. Civ. P. 12 to adversary proceedings. A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint, arguing that the

complaint fails to state a claim upon which relief can be granted. *See, e.g.*, *Holloway v. Bizzaro*, 571 F. Supp. 2d 1270, 1272 (S.D. Fla. 2008). When considering such a motion, the Court must generally limit its inquiry to the four corners of the complaint and accept all factual allegations as true. *See St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

<u>Analysis</u>

The Plaintiff's Complaint seeks a determination that the debt owed to the Plaintiff is nondischargeable because it is a debt under Count I for fraud or defalcation while acting in a fiduciary capacity under 11 U.S.C. § 523(a)(4), and under Count II for willful or malicious injury to another entity or to the property of another entity under § 523(a)(6). The Defendant argues Count I should be dismissed with prejudice and Count II should be dismissed without prejudice.

**I.    <u>Count I is dismissed with prejudice as to Malpractice Case allegations and otherwise dismissed without prejudice.</u>**

Count I seeks relief under § 523(a)(4), which excepts from discharge all debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" because she: (1) had a fiduciary duty to the Plaintiff as his attorney in the Divorce Case; (2) disregarded the Plaintiff's instructions and fraudulently advised the state court that the Plaintiff agreed to the Martial Settlement Agreement; (3) failed to correct her error once it was discovered; (4) destroyed evidence in the Malpractice Case; and (5) disregarded court orders in the Malpractice Case. The Defendant seeks dismissal of Count I with prejudice because the Defendant was not acting in a

fiduciary capacity and, even if she was, the allegations do not support a finding of fraud or defalcation.

    A.    <u>Allegations Related to Actions During the Malpractice Case</u>

At the outset, the Court notes that § 523(a)(4) requires that the Defendant commit "fraud or defalcation *while* acting in a fiduciary capacity." Many courts, including the Eleventh Circuit, have explained that the debtor's fiduciary capacity must exist "prior to the act which created the debt." *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) (quoting *Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993)); *Great Am. Ins. Co. v. Brandt (In re Brandt)*, 594 B.R 829, 832–33 (Bankr. S.D. Fla. 2019) (Ray, J.); *Coosemans Miami, Inc. v. Arthur (In re Arthur)*, 589 B.R. 761, 766 (Bankr. S.D. Fla. 2018) (Mark, J.) (holding that the Perishable Agricultural Commodities Act did not satisfy the technical trust requirement because it only applies many of the trust-like duties and restrictions after a showing of malfeasance). Though none of these cases dealt with allegations of fraud or defalcation that occurred after the debtor's fiduciary capacity had ended, the plain meaning of the word "while" requires that the alleged fraud or defalcation occur not just after the debtor's fiduciary capacity arises, but also before it ends.

In the Complaint, the Plaintiff asserts that the Defendant violated § 523(a)(4), in part, by destroying evidence and disregarding court orders in the Malpractice Case. Plaintiff does not allege that the Defendant continued in a fiduciary capacity after she was no longer his counsel and was the defendant in the Malpractice Case; any such allegation would seemingly be absurd. Accordingly, none of the allegations relating to the Malpractice Case can possibly form the basis for a claim for fraud or

defalcation *while* acting in a fiduciary capacity.  As a result, Count I is dismissed with prejudice to the extent reliant on matters arising in the Malpractice Case.

      B.    <u>"Fiduciary Capacity"</u>

      Whether a debtor was acting in a fiduciary capacity under § 523(a)(4) is a question of federal law.  *See Fernandez-Rocha*, 451 F.3d at 816; *Quaif*, 4 F.3d at 953; *see, e.g., Arthur*, 589 B.R. at 765.  Since at least 1844, the Supreme Court has interpreted "fiduciary" – in the context of the nondischargeability provisions of federal bankruptcy law – as a "strict and narrow" term referring to technical trusts. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934) (Cardozo, J.); *Chapman v. Forsyth*, 43 U.S. 202, 208 (1844); *see also Quaif*, 4 F.3d at 953 ("The Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively, but instead is intended to refer to 'technical' trusts.").  The technical trust requirement can be satisfied by a relationship created by statute or common law that mirrors the structure of a voluntary, express trust.  *See Davis*, 293 U.S. at 333; *Jackson v. Jackson (In re Jackson)*, 724 F. App'x 905, 910 (11th Cir. 2018); *Fernandez-Rocha*, 451 F.3d at 816; *Quaif*, 4 F.3d at 953–54; *Brandt*, 594 B.R at 832; *Arthur*, 589 B.R. at 765–66; *see also Arvest Mortg. Co. v. Nail (In re Nail)*, 600 F.3d 1036, 1040 (8th Cir. 2012); *Fowler & Peth, Inc. v. Regan (In re Regan)*, 477 F.3d 1209, 1211 (10th Cir. 2007).

      Circuits are split regarding whether an attorney, in the context of a standard attorney-client relationship, acts in a "fiduciary capacity."  The Second and Seventh Circuits, for instance, hold that the attorney-client relationship, although usually not involving a technical or express trust, qualifies.  *The Andy Warhol Foundation for*

*Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 168 (2d Cir. 1999); *see also In re Marchiando*, 13 F.3d 1111, 115 (7th Cir. 1994) ("[A] lawyer is deemed the fiduciary of his client, even if he does not manage a fund entrusted to him by the client."). In eschewing a strict technical trust requirement, the Second Circuit focused largely on the fact that the attorney-client relationship involves a difference in knowledge or power between a fiduciary and her principal that gives the fiduciary "a position of ascendancy over the [principal]" and proscribes to the attorney the requirement "to deal fairly, honestly[,] and with undivided loyalty" in a manner that "superimposes … a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property[,] and honoring the clients' interests over the lawyer's." *Hayes*, 183 F.3d at 167–69. The Seventh Circuit similarly focused on the attorney-client relationship imposing the same high standard of care that is held by trustees. *Marchiando*, 13 F.3d at 1115. Under this approach, therefore, a debtor's "fiduciary capacity" under § 523(a)(4) need not necessarily be the result of a relationship that mirrors a technical trust so long as the debtor, in proper combination, held power over and owed trustee-type duties of care and loyalty to the plaintiff.

The Sixth, Ninth, and Tenth Circuits take a narrower view and conclude that the attorney-client relationship, without more, does not cause an attorney to act in a "fiduciary capacity" under § 523(a)(4). *See Banks v. Gill Dist. Ctr., Inc. (In re Banks)*, 263 F.3d 862, 870–71 (9th Cir. 2001); *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367,

1371–72 (10th Cir. 1996). These circuits limit the inquiry to whether the money or property on which the debt at issue is based was entrusted to the attorney-debtor in the context of a technical or express trust. *Banks*, 263 F.3d at 871; *Garver*, 116 F.3d at 179; *Young*, 91 F.3d at 1371. Under this standard, neither an attorney's "general fiduciary duty of confidence, trust, loyalty, and good faith," nor the "inequality between the parties' knowledge or bargaining power" inherent in the attorney-client relationship are sufficient to create a "fiduciary capacity" under § 523(a)(4). *Young*, 91 F.3d at 1372. In short, to act in a "fiduciary capacity," an attorney must hold client property in trust. *See, e.g.*, *Stephens v. Bigelow (In re Bigelow)*, 271 B.R. 178, 188 (9th Cir. BAP 2001).

Though the Eleventh Circuit has not specifically addressed whether the standard attorney-client relationship places an attorney in a "fiduciary capacity" under § 523(a)(4), it has consistently interpreted the statute narrowly. In *Fernandez-Rocha*, for example, the Eleventh Circuit concluded that a debtor-physician was not a fiduciary to a patient under the Florida Financial Responsibility Act because the law does not "require the physician to hold and account for the funds to third party patients … [or] create any property right in a doctor's escrow fund in favor of a patient." *Fernandez-Rocha*, 451 F.3d at 818. By contrast, in *Quaif*, the Eleventh Circuit held that an insurance agent acted in a "fiduciary capacity" because, under Georgia law, the insurance agent (1) was required to "promptly account for and remit payments of funds to the insurer," and (2) was forbidden "from commingling the funds with his operating or personal accounts." *Quaif*, 4 F.3d at 954. In considering

whether the debtor acted in a "fiduciary capacity," in these cases, the Eleventh Circuit looked to whether the statutes at issue created a technical trust.  *See Fernandez-Rocha*, 451 F.3d at 818; *Quaif*, F.3d at 954.

The Eleventh Circuit's approach more closely aligns with the Sixth, Ninth, and Tenth Circuits and leaves no room for the Court to consider, like the Second and Seventh Circuits, other possible factors such as power dynamics or generalized duties of care. Instead, the Eleventh Circuit closely adheres to the Supreme Court's strict and narrow interpretation of the phrase "fiduciary capacity," which is also consistent with the general mandate to strictly construe all exceptions to discharge in favor of the debtor.  *See United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1327 (11th Cir. 2011).

The Plaintiff argues that a client entrusts his cause of action to the attorney and, in so doing, places the attorney in a "fiduciary capacity" under § 523(a)(4).  In support, the Plaintiff cites *Brawer v. Gelman (In re Gelman)*, 47 B.R. 735 (Bankr. S.D. Fla. 1985) (Weaver, J.) in which an attorney-debtor failed to file a personal injury claim until after the statute of limitations expired.  The bankruptcy court concluded that the attorney-debtor acted in a fiduciary capacity because he became a fiduciary of the plaintiff's cause of action when he agreed to represent the plaintiff.  *Id.* at 737–38.  *Gelman*, however, neither includes an explanation or analysis of how the attorney-client relationship creates a technical trust.  The *Gelman* court was bound by case law that limited the definition of "fiduciary capacity" to those debtors

operating within technical trusts.[1]  *See, e.g.*, *Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 881 (5th Cir. 1982); *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1340 (5th Cir. 1980).  The overwhelming weight of controlling and persuasive case law suggests *Gelman* is not, and never was, good law, and other courts in this circuit have criticized *Gelman* for similar reasons.  *See, e.g.*, *Kennesaw Drywall & Supply, Inc. v. Davis (In re Davis)*, No. 04-9209, 2005 WL 6486395, at *1–2 (Bankr. N.D. Ga. Sept. 26, 2005) (finding *Gelman* to be an "unpersuasive" minority position). Regardless, the Eleventh Circuit has, since *Gelman*, entrenched the Supreme Court's strict and narrow definition of "fiduciary capacity."  *Fernandez-Rocha*, 451 F.3d at 816; *Quaif*, 4 F.3d at 953.

Courts within the Eleventh Circuit have limited the finding of a technical trust to circumstances where there is (1) a trust *res*;[2] (2) an identifiable beneficiary; and (3) affirmative trust duties established by contract or statute.  *See Forrest*, 2021 WL 1784085, at *5 n. 37; *Recanati v. Roberts (In re Roberts)*, 594 B.R. 484, 493 (Bankr. N.D. Fla. 2018); *Rodriguez v. Brown (In re Brown)*, No. 13-01407-EPK, 2013 WL 6633413, at *3 (Bankr. S.D. Fla. Dec. 16, 2013) (Kimball, J.); *Merrill Lynch Bus. Fin.*

---

[1] All opinions issued by the Fifth Circuit in cases that were "submitted for decision" before October 1, 1981, are binding in the Eleventh Circuit.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981); *see also Arthur*, 589 B.R. at 767 (treating *Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873 (5th Cir. 1982) and *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980) as binding precedent).

[2] Most courts require that the trust *res* be segregated.  *See, e.g.*, *Rodriguez v. Brown (In re Brown)*, No. 13-01407-EPK, 2013 WL 6633413, at *3 (Bankr. S.D. Fla. Dec. 16, 2013) (Kimball, J.).  At least one bankruptcy court in this circuit, however, has concluded that the segregation of property is evidence of a trust *res* rather than a necessity to find the existence of one.  *See Melon Acres, Inc. v. Villa (In re Villa)*, 625 B.R. 111, 120–21 (Bankr. N.D. Fla. 2021).  This Court is not faced with allegations requiring it to determine whether a trust *res* must be segregated and, consequently, does not address the issue here.

*Serv., Inc. v. Daprizio (In re Daprizio)*, 365 B.R. 268, 282–83 (Bankr. S.D. Fla. 2007) (Ray, J.); *Posillico v. Bratcher (In re Bratcher)*, 281 B.R. 753, 762 (Bankr. M.D. Fla. 2002); *Cladakis v. Triggiano (In re Triggiano)*, 132 B.R. 486, 490 (Bankr. M.D. Fla. 1991). Though the Eleventh Circuit has not expressly adopted or articulated this test, its elements are rooted in binding case law and the basic elements of trust formation.[3] *See* Fla. Stat. §§ 736.0401 & 736.0402; *see, e.g.*, *Fernandez-Rocha*, 451 F.3d at 818; *Quaif*, 4 F.3d at 954; *Cross*, 666 F.2d at 881; *Angelle*, 610 F.2d at 1340.

> A trust may be created by:
>
> (1) Transfer of property to another person as trustee during the settlor's lifetime or by will or other disposition taking effect on the settlor's death;
>
> (2) Declaration by the owner of property that the owner holds identifiable property as trustee; or
>
> (3) Exercise of a power of appointment in favor of a trustee.

*See* Fla. Stat. § 736.0401. Consistent with the trustee's actual holding of trust property, a trustee generally has "all powers over the trust property that an unmarried competent owner has over individually owned property." *See* Fla. Stat. § 736.0815(1)(b). These powers include, for example, the right to manage the trust property in accordance with the trustee's business judgment without first having to consult the beneficiaries, and the right to bring causes of action in the trustee's own name on behalf of the trust. Fla. Stat. §§ 736.0804 & 736.0816(23); Fla. R. Civ. P. 1.210(a). This Court is hardly the first to articulate the notion that, to find the existence of a technical trust, the defendant's relationship to the purported property

---

[3] The Florida Trust Code mirrors the Uniform Trust Code. *See Megiel-Rollo v. Megiel*, 162 So. 3d 1088, 1095 (Fla. 2d DCA 2015).

at issue must be analogous to a trustee's relationship to trust property. *See, e.g.*, *Fernandez-Rocha*, 451 F.3d at 816 (explaining that debtor-defendant was not a fiduciary, in relevant part, because Florida law did not require the debtor to hold and control the plaintiff's funds, nor gave the plaintiff any property interest in funds already held and controlled by the debtor).

Unlike the way a trustee controls trust property, an attorney has neither an ownership interest (technical or otherwise) in, nor the authority to control, a client's cause of action. To the contrary, an attorney is generally prohibited from acquiring an interest in a client's cause of action and "must abide by a client's decisions concerning the objectives of representation, and … must reasonably consult with the client as to the means by which they are to be pursued." *See* Fla. Bar R. 4-1.2(a) & 4-1.8(i). While a trustee holds property in trust and need not consider the beneficiaries wishes, an attorney merely advises a client with respect to the client's cause of action and is dutybound to manage the cause of action based on the client's decisions. As such, an attorney's relationship to a client's cause of action is distinct from a trustee's relationship to trust property.

Though the management of a cause of action might burden an attorney with significant and solemn duties to their client, it does not create the sort of technical trust necessary to place a debtor in a "fiduciary capacity" under § 523(a)(4). This conclusion is consistent with other cases throughout this circuit holding that other types of debtors, such as corporate officers, do not act in a "fiduciary capacity" despite holding similar duties of care and loyalty. *See, e.g.*, *Kapila v. Talmo (In re Talmo)*,

175 B.R. 775, 778 (Bankr. S.D. Fla. 1994) (Mark, J.) ("Absent a Florida statute creating a trust relationship or Florida case law finding corporate officers to be trustees over corporate assets, there is no basis here for a claim of nondischargeability under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity.").

Certainly, an attorney and a client can have a technical trust relationship, for example, when a client places funds in the attorney's trust account. *See* Fla. Bar R. 4-1.15 & 5-1.2. Under such circumstances, the funds are segregated from the attorney's business or personal account and held in an account owned by the attorney for the express benefit of the client. *See* Fla. Bar R. 5-1.1(a)(1) ("A lawyer must hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation."). In effect, the client is both the settlor and beneficiary of the funds in the attorney's trust account, and the attorney, as the trustee of those funds, is tasked with actually possessing the funds and holding them for the benefit of the client. These are the sort of circumstances that create a technical trust.

By contrast, the Defendant is merely alleged to have mismanaged a lawsuit and based on that error, the Plaintiff received a judgment against the Defendant. These allegations do not establish that the Defendant, like a trustee, possessed the cause of action and held it for the benefit of the Plaintiff. As a result, they are insufficient to support a finding that the Defendant acted in a "fiduciary capacity" when she disregarded the Plaintiff's instructions and announced the Martial Settlement Agreement on the record in the Dissolution Case.

The Court further notes that, to whatever extent the Defendant might have acted *as if* she were a fiduciary by making decisions with respect to the Plaintiff's cause of action without the Plaintiff's permission, the Court cannot manufacture some equitable remedy under § 523(a)(4).  "A technical trust is not a trust created involuntarily, by operation of law, to right a wrong, like resulting or constructive trusts" because such trusts arise either based on the "unintended consequences of a transfer" or as a remedy for some wrongdoing. *Arthur*, 589 B.R. at 765 (citing *Quaif*, 4 F.3d at 953); *see also Fernandez-Rocha*, 451 F.3d at 816.  Under such circumstances, the resulting trust relationship would not have existed when the Defendant acted, and the alleged fraud or defalcation, consequently, would not have occurred, as required by the statute, *while* the Defendant was acting in a fiduciary capacity.

The facts as stated in the Complaint, therefore, fail to sufficiently allege a cause of action under § 523(a)(4) and Count I must be dismissed.  In an abundance of caution, however, the Court dismisses Count I without prejudice to the Plaintiff's ability to timely replead his § 523(a)(4) claim.

## II.    <u>Count II is dismissed without prejudice.</u>

11 U.S.C. § 523(a)(6) excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" from discharge.  Under 11 U.S.C. § 1328(a), however, Chapter 13 debtors receive a "super discharge" from debts under § 523(a)(6) unless the debtor seeks a hardship discharge. *See* 11 U.S.C. §§ 1328; *see also In re Vick*, 327 B.R. 477, 487 n. 15 (Bankr. M.D. Fla. 2005).  Because the Defendant has not sought a hardship discharge, the parties agree that the

Plaintiff's § 523(a)(6) claim is not ripe.  Consequently, Count II is dismissed without prejudice to the Plaintiff's right to reraise his § 523(a)(6) claim if the Defendant seeks a hardship discharge.

Accordingly, the Court **ORDERS**:

1.    The *Amended Motion to Dismiss* (Doc. 14) is **GRANTED IN PART**.

2.    Count I is **DISMISSED WITH PREJUDICE** to the extent that it relies on matters arising from the Malpractice Case.

3.    The Complaint (Doc. 1) is otherwise **DISMISSED WITHOUT PREJUDICE**.  Count II is specifically dismissed without prejudice to the Plaintiff's ability to reraise his § 523(a)(6) claim if the Debtor seeks a hardship discharge.

4.    The Plaintiff may file an amended complaint that includes his § 523(a)(4) claim within fourteen days of the entry of this Order.  If the Plaintiff amends his Complaint, the Defendant may respond to the Complaint within fourteen days of the filing of the amended complaint.

# # #

Copies To:
Mason A. Pertnoy, Esq.
Jason Slatkin, Esq.

*Jason Slatkin, Esq. is directed to serve this Order on all interested parties.*